**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 25, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

In re: UTE MESA LOT 1, LLC, a
Colorado limited liability company,

    Debtor,

------------------------

UTE MESA LOT 1, LLC,

    Plaintiff - Appellant,

v.

FIRST-CITIZENS BANK & TRUST
COMPANY; UNITED WESTERN
BANK,

    Defendants - Appellees.

No. 12-1134

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 1:11-CV-01786-WYD)**

---

Duncan E, Barber, (Julie Trent and Steven T. Mulligan of Bieging, Shapiro &
Barber, L.L.P., on the briefs), Denver, Colorado, for Plaintiff - Appellant.

Craig A. Christensen of Lindquist & Vennum, P.L.L.P., Denver, Colorado, for
Defendants - Appellees.

---

Before **KELLY**, **LUCERO**, and **MATHESON**, Circuit Judges.

---

**KELLY**, Circuit Judge.

Plaintiff-Appellant Ute Mesa Lot 1, LLC, ("Ute Mesa") appeals from a bankruptcy court order denying it relief under 11 U.S.C. § 547(b). The narrow issue is whether a notice of lis pendens filed in Colorado can constitute a preferential transfer under 11 U.S.C. § 547(b). Both the bankruptcy and district courts held that a lis pendens is not a transfer because it merely serves as notice of pending litigation. Exercising jurisdiction under 28 U.S.C. § 158(d)(1), we affirm.

Background

Ute Mesa is a real estate developer in Colorado. In October 2007, it received a $12 million loan from Defendant-Appellee United Western Bank ("Bank")[1] to finance the construction of a single family home on property it owned in Aspen ("property"). To secure the loan, the Bank prepared a deed of trust incorrectly identifying Ute Mesa's sole member (Leathem Stern) as the owner rather than Ute Mesa. Because the grantor under the deed of trust was not the owner of the property, the deed of trust was ineffective in giving the Bank a lien on the property.

---

[1] In January 2011, Defendant-Appellee First-Citizens Bank & Trust Company acquired United Western Bank's interest in the construction loan and state-court claims. For convenience, we use the term "Bank" to refer to United Western and First-Citizens collectively.

On May 19, 2010, the Bank filed suit in Colorado state court seeking reformation of the deed of trust and a declaration that it had a first priority lien on the property. Two days later, the Bank filed a notice of lis pendens in the Pitkin County real property records.

On August 13, 2010, Ute Mesa petitioned for Chapter 11 bankruptcy relief. Ute Mesa continues as debtor in possession of the property. In April 2011, Ute Mesa filed an adversary proceeding against the Bank seeking to avoid the lis pendens as a preferential transfer. The bankruptcy court granted the Bank's motion to dismiss, and the federal district court affirmed.

Relying upon the bankruptcy court's analysis, the district court recognized that a "lis pendens does not create a lien, retain title as a security interest, or foreclose on a debtor's equity of redemption." Ute Mesa Lot 1, LLC v. First Citizens Bank (In re Ute Mesa), No. 11-cv-01786, 2012 WL 1015757, at *3 (D. Colo. Mar. 23, 2012) (internal quotation omitted). It agreed with the bankruptcy court that, "since a lis pendens only serves the limited purpose of *notice*, the filing of a lis pendens is not a transfer disposing of or parting with an *interest in the property* within the meaning of § 101(54)(D)(ii)." Id. at *4 (internal quotation omitted). Thus, no preferential transfer occurred, and Ute Mesa could not avoid the lis pendens.

<u>Discussion</u>

We review the bankruptcy court's decision de novo, as it involves only legal questions. <u>Valley Bank & Trust Co. v. Spectrum Scan, LLC (In re Tracy Broad. Corp.)</u>, 696 F.3d 1051, 1053 (10th Cir. 2012).

Ute Mesa argues that the bankruptcy and district courts erred by beginning and ending their analyses with §§ 547(b) and 101(54) of the Bankruptcy Code and Colorado law. Relying on § 547(e)(1)(A), Ute Mesa asserts that a "transfer of an interest in property" occurs when a bona fide purchaser cannot acquire an interest superior to that of a creditor. According to Ute Mesa, because the lis pendens prevents a bona fide purchaser from acquiring an interest in the property superior to the Bank's interest, the lis pendens qualifies as a transfer of an interest in the property.

The Bank argues that the first and only step of the analysis is to determine whether an underlying property interest exists under state law. Because a lis pendens is merely a notice and does not constitute a lien, no transfer occurred. We agree.

I.     Transfer of an Interest in Property

Under § 547 of the Bankruptcy Code, a debtor in possession[2] "may avoid any transfer of an interest of the debtor in property, to or for the benefit of a

_____

  [2] In a Chapter 11 case, a debtor in possession has all the rights and powers of a bankruptcy trustee, including the power of avoidance under § 547. 11 U.S.C. § 1107(a).

creditor," if that transfer occurs within 90 days prior to the filing of the bankruptcy petition. 11 U.S.C. §§ 547(b)(1), (4). To be an avoidable "preferential transfer," that transfer must meet certain statutory requirements (§ 547 (b)(1)–(5)). Fundamentally, however, the "keystone of a preference is a transfer of the debtor's property." 5 Collier on Bankruptcy ¶ 547.05 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). In pertinent part, the Bankruptcy Code defines a "transfer" as:

> each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with—
> (i) property; or
> (ii) an interest in property.

11 U.S.C. § 101(54)(D). The Bankruptcy Code, however, does not define "property" or "interest in property." Given this lacuna, "'property' and 'interests in property' are creatures of state law." Barnhill v. Johnson, 503 U.S. 393, 398 (1992). See also Bailey v. Big Sky Motors, Ltd. (In re Ogden), 314 F.3d 1190, 1197 (10th Cir. 2002). Thus we must look to the property rights attendant to the filing of a lis pendens under Colorado law.

## A. *Colorado Lis Pendens*

In Colorado, a party may record a notice of lis pendens against real property after initiating an action "wherein relief is claimed affecting the title to real property." Colo. Rev. Stat. § 38-35-110(1). Recording a lis pendens provides "notice to any person thereafter acquiring, by, through, or under any

party named in such notice, an interest in the real property . . . that the interest so acquired may be affected by the action described in the notice." Id.

Colorado cases applying the doctrine of lis pendens make clear that a "lis pendens does not constitute a lien against real property." Hewitt v. Rice, 154 P.3d 408, 412 (Colo. 2007). A judgment lien does not arise against real property until a "transcript of the judgment" is recorded. Colo. Rev. Stat. § 13-52-102(1). Until judgment is recorded, "no new interest is created by the existence of a lis pendens notice." Kerns v. Kerns, 53 P.3d 1157, 1164 n.6 (Colo. 2002). Nonetheless, the recordation of a lis pendens does have a very real legal effect: "Once a lis pendens is filed, it renders title unmarketable and therefor effectively prevents the property's transfer until the litigation is resolved or the lis pendens is expunged." Id. This protects "the judgment of the court [so that it] cannot be frustrated by alienation of the property to a third party not bound by the outcome of the litigation." Id. at 1162. Despite a lis pendens's attendant consequences, "[h]owever, it is still only a notice." Id. at 1164 n.6.

Ute Mesa argues that the bankruptcy and district courts erred by narrowing their analyses to these statements of Colorado law. We disagree. While federal law answers "[w]hat constitutes a transfer" for purposes of § 547, that answer turns on the definitions of "property" and "interests in property," which are unique creatures of state law. Barnhill, 503 U.S. at 397-98. Here, Colorado law delineates that a lis pendens serves the limited purpose of providing potential

- 6 -

purchasers "notice" of a possible judgment, and it creates "no new interest" for the filer. Kerns, 53 P.3d at 1164 n.6. While the owner might have lost its right to convey marketable title, the filing of a lis pendens does not thereby transfer that right "to or for the benefit" of the filer. 11 U.S.C. § 547(b)(1). Therefore, the Bank's lis pendens is not a "transfer of an interest of the debtor in property, to or for the benefit of a creditor" within the meaning of the Bankruptcy Code.

B.     *The Bundle of Rights*

Ute Mesa argues that, although the lis pendens did not transfer its property per se, the lis pendens did transfer one of its discrete interests in the property—its right to convey fee simple title free of the interests of the Bank. Aplt. Supp. Br. 2. Because the lis pendens rendered the property unmarketable and subject to the Bank's claims, Ute Mesa contends that its rights were diminished upon the recording of the lis pendens, thus reducing the value of the property to the detriment of its creditors. Id. at 9-10. The Bank, on the other hand, argues that the lis pendens only affects the rights of potential purchasers vis-a-vis the Bank, leaving Ute Mesa's interests unaffected. Aplee. Supp. Br. 4.

Not only is a disposition of the debtor's "property" a transfer, a disposition of any of the debtor's separate "interests in property" is likewise a transfer under the Bankruptcy Code. 11 U.S.C. § 101(54)(D)(i)–(ii). We recognize that a lis pendens in Colorado clouds an owner's title thereby impairing its marketability. See Kerns, 53 P.3d at 1164 n.6. However, we do not see how clouding title

constitutes "disposing of or parting with" an interest of the debtor in property within the Bankruptcy Code's definition of a "transfer." 11 U.S.C. § 101(54)(D). Certainly, fee simple ownership is the most comprehensive bundle of rights and includes the right to convey property. That right, however, is not destroyed by a notice of lis pendens. Although a lis pendens might render title "unmarketable" under Colorado law, the owner still retains the right to convey that property, assuming he finds a willing buyer. See Hewitt, 154 P.3d at 412-13; Kerns, 53 P.3d at 1164 n.6; Hammersley v. District Court In and For Routt Cnty., 610 P.2d 94, 96 n.2 (Colo. 1980).

In fact, the Colorado Supreme Court has addressed this very argument. In Hammersley, the property owner sought to have a notice of lis pendens vacated on the grounds that "the notice of lis pendens [would] cloud his title and [would] impair its marketability." 610 P.2d at 96 n.2. The Colorado Supreme Court flatly rejected that assertion by stating that a lis pendens "harm[s] no legitimate interest of the owner." Id. at 96. While the marketability of title was tarnished, the court noted, "[t]his means only that a subsequent purchaser will be bound by the outcome of the litigation and that purchase may be discouraged until that outcome is certain." Id. at 96 n.2.

Here, Ute Mesa may find it difficult to locate a purchaser willing to buy the property at full price, pending the resolution of the Bank's claims. However, this does not detract from the fact that the lis pendens itself "harm[s] no legitimate

interest of the owner," Ute Mesa. Id. at 96. Though the right to convey property may have been devalued, it has not been "disposed of" or "parted with" so to qualify as a "transfer" under the Bankruptcy Code. Contrary to Ute Mesa's argument, a "diminished" interest does not equate to a "transferred" interest. Ute Mesa has been deprived of no more than its ability to convey the property without first informing the prospective purchaser of the existence of the Bank's claim. Accordingly, under Colorado law, the effect of a lis pendens rendering title unmarketable is, on its own, not a transfer of an interest of the debtor in property.

II.     Perfection vs. Transfer of an Interest in Property

Ute Mesa challenges reliance on Colorado law and argues that § 547(e)(1)(A) also plays a determinative role in whether a "transfer of an interest of the debtor in property" has occurred under § 547(b). Aplt. Br. 9. It further argues that § 547(e)(2)(B) sets the date of the transfer as the date of the filing of the lis pendens, because the lis pendens was recorded more than thirty days after the Bank made its loan. Aplt. Br. 8.

Section 547(e)(1)(A) of the Bankruptcy Code provides that:

> a transfer of real property . . . is perfected when a bona fide purchaser of such property from the debtor . . . cannot acquire an interest that is superior to the interest of the transferee . . . .

11 U.S.C. § 547(e)(1)(A).

Additionally, § 547(e)(2)(B) provides that:

> a transfer is made . . . at the time such transfer is perfected, if such transfer is perfected after [30 days after such transfer takes effect] . . . .

11 U.S.C. § 547(e)(2)(B).

Ute Mesa's reliance on § 547(e)(1)(A) in this context conflates perfection of a transfer with the existence of a transfer. As is clear from its text, § 547(e)(1)(A) does not attempt to define a "transfer of real property." Rather, § 547(e)(1)(A) determines whether a transfer of an interest in property—as defined by § 101(54) and state law—"is perfected" for the purposes of § 547. Likewise, § 547(e)(2)(B) only determines the timing of a transfer for preference purposes; it does not purport to establish whether a transfer has in fact taken effect. The bankruptcy and district courts properly avoided analyzing the effects of the lis pendens under § 547(e)(1)(A).[3]

Ute Mesa relies on a Ninth Circuit case, <u>Hurst Concrete Prods., Inc. v. Lane (In re Lane)</u>, 980 F.2d 601 (9th Cir. 1992), to argue that "perfection" of an interest equates to "transfer" of an interest under § 547. To be sure, the Ninth Circuit painted in broad strokes when it held "that the filing of a valid lis pendens is a transfer within the meaning of the Bankruptcy Code." <u>Id.</u> at 606. However, the creditor in <u>In re Lane</u> had already recorded a judgment against the debtors

---

[3] Likewise, § 547(e)(2)(B) is inapposite, as the "transfer" that the lis pendens perfects is the attachment of the judgment lien arising from the underlying state court action, not the issuance of the loan as Ute Mesa contends. Aplt. Br. 8.

- 10 -

before the debtors filed their bankruptcy petition.  Id. at 603.  The court addressed whether a transfer relates back in time to a lis pendens, not whether a lis pendens itself constitutes a transfer.  Here, it is uncontroverted that the Bank did not receive a favorable judgment in the state court action before Ute Mesa filed its Chapter 11 petition, and In re Lane is inapposite.

Other decisions support the conclusion that "perfection" and "transfer" are distinct inquiries for preferential transfer purposes.  Perfection is a "preliminary determination" that must be made to "establish[] the date on which a transfer was made," Grover v. Gulino (In re Gulino), 779 F.2d 546, 549 (9th Cir. 1985); it does not control whether a transfer was made.  In Saghi v. Walsh (In re Gurs), the Bankruptcy Appellate Panel of the Ninth Circuit held that:

> The filing of [a] lis pendens cannot be characterized as a transfer of the debtor's property nor can it be characterized as a transfer on account of an antecedent debt.  To argue otherwise confuses avoidance of a transfer of an interest in the debtor's property with avoidance of an act that perfects, as against potential bona fide purchasers, a claim of ownership.  Section 547 permits avoidance of the former not the latter.

34 B.R. 755, 757 (B.A.P. 9th Cir. 1983).  The Ninth Circuit did not disturb this limited holding—that perfection is not itself a transfer—in In re Lane.  Simply put, § 547(b) has no effect where there has been "perfection, but no transfer." Freedom Grp., Inc. v. Lapham-Hickey Steel Corp. (In re Freedom Grp.), 50 F.3d

- 11 -

408, 412 (7th Cir. 1995).[4]

Ute Mesa raises an additional argument that, even though the Bank had not recorded a judgment before Ute Mesa filed its bankruptcy petition, any eventual judgment is itself a present transfer because it would necessarily "relate back" to the filing of the lis pendens.  Aplt. Br. 10-11.  However, Ute Mesa did not raise this argument in its complaint, response to the Bank's motion to dismiss, or opening brief in the district court.  We will not permit Ute Mesa to raise it for the first time here.  Katz v. Gerardi, 655 F.3d 1212, 1217 n.3 (10th Cir. 2011).

AFFIRMED.

---

[4] The prime example of perfection before transfer is pre-filing a UCC financing statement before the attachment of a security interest.  See, e.g., Colo. Rev. Stat. § 4-9-502(d).